**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**

DONNAL S. MIXON,
               Appellant,

        v.

OFFICE OF PERSONNEL
    MANAGEMENT,
               Agency.

DOCKET NUMBER
SF-0845-15-0822-I-2

DATE: December 29, 2016

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

<u>Donnal S. Mixon</u>, Palm Springs, California, pro se.

<u>Roxann Johnson</u>, Washington, D.C., for the agency.

**BEFORE**

Susan Tsui Grundmann, Chairman
Mark A. Robbins, Member

**FINAL ORDER**

¶1      The appellant has filed a petition for review of the initial decision, which affirmed the reconsideration decision of the Office of Personnel Management (OPM) denying his request for a waiver of the overpayment of his disability retirement annuity. Generally, we grant petitions such as this one only when: the

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

initial decision contains erroneous findings of material fact; the initial decision is based on an erroneous interpretation of statute or regulation or the erroneous application of the law to the facts of the case; the administrative judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case; or new and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed. Title 5 of the Code of Federal Regulations, section 1201.115 (5 C.F.R. § 1201.115). After fully considering the filings in this appeal, we conclude that the petitioner has not established any basis under section 1201.115 for granting the petition for review. Therefore, we DENY the petition for review and AFFIRM the initial decision, which is now the Board's final decision. 5 C.F.R. § 1201.113(b).

## BACKGROUND

¶2      The appellant appealed an OPM reconsideration decision finding that he was overpaid $125,524.00 in Federal Employees' Retirement System (FERS) retirement annuity benefits from August 1, 2007, to August 30, 2014, and denying his request for a waiver. *Mixon v. Office of Personnel Management*, MSPB Docket No. SF-0845-15-0822-I-1, Initial Appeal File (IAF), Tab 1. OPM approved the appellant's disability retirement application on August 15, 2007. IAF, Tab 5 at 69-71. In the approval letter, OPM advised him that he must apply for Social Security disability benefits and, if awarded such benefits, "**immediately notify us of the amount and the effective date of the monthly benefit.**" *Id.* at 69 (emphasis in original). OPM explained that because his FERS disability benefits would be reduced by 100 percent of any Social Security benefits payable for the first 12 months, the appellant should not negotiate any Social Security checks until his FERS benefits had been reduced to account for his receiving Social Security benefits. *Id.* at 70. At the same time that he applied for a disability retirement annuity, the appellant also applied and was approved

for disability benefits under his Federal Employee Group Long Term Disability (FEGLTD) policy. Refiled Appeal File (RAF), Tab 8 at 14.

¶3 On April 21, 2008, OPM sent the appellant a letter instructing him to notify it of the current status of his application for Social Security benefits. IAF, Tab 5 at 56-57. The letter advised the appellant that if he was receiving Social Security disability benefits and thus receiving an overpayment in FERS benefits, he was legally required to repay that money to OPM, and further, if the Social Security Administration sent him a retroactive payment, he should hold such payment until he received notice from OPM of the amount of his overpayment. *Id.* at 56. On May 5, 2008, the appellant notified OPM that he had been denied Social Security benefits and had requested reconsideration of his application. *Id.* at 55. The appellant's June 1, 2008 FERS annuity payment, which he received on July 1, 2008, was adjusted pursuant to 5 U.S.C. § 8452(a)(1)(A), reducing his monthly payment from $6,661.00 to $4,441.00. IAF, Tab 5 at 47; RAF, Tab 8 at 16, Tab 16 at 6.

¶4 On July 13, 2008, the Social Security Administration approved the appellant for disability retirement benefits effective August 2007. IAF, Tab 5 at 23-26. Shortly thereafter, the appellant called OPM and informed an employee there that his Social Security benefits had been approved. RAF, Tab 8 at 15. The OPM employee allegedly told the appellant that his retirement file had been prepared for transfer to storage, but that she would put a note in the file about the grant of Social Security benefits, and the agency would act on that information when the file was transferred. *Id.* at 15-16. OPM has no record of the appellant's telephone call and did not adjust his annuity payment. IAF, Tab 9 at 7; RAF, Tab 6 at 8-9.

¶5 In December 2013, while he was researching an unrelated matter, the appellant found a potential discrepancy between the amount of the FERS annuity payment he was receiving and the amount of the nontaxable benefits he believed he should have been receiving under his FEGLTD policy. RAF, Tab 8 at 17. The

appellant contacted OPM and learned that his FERS benefits were not being offset by his Social Security benefits. IAF, Tab 5 at 48-50; RAF, Tab 8 at 17-18. He thus asked OPM to correct the error. IAF, Tab 5 at 48-50. He recontacted OPM on a number of other occasions during 2014 to reiterate his request and engaged the assistance of United States Senator Ron Wyden's office to try to resolve the issue. RAF, Tab 8 at 18-19.

¶6    On April 2, 2015, OPM notified the appellant that he had been overpaid in the amount of $125,524.00. IAF, Tab 5 at 35-44. The appellant timely requested reconsideration of the decision. *Id.* at 9-31. OPM issued a reconsideration decision on August 4, 2015, affirming the initial decision and denying his request for a waiver. *Id.* at 5-8. He subsequently filed this Board appeal. IAF, Tab 1.

¶7    Shortly thereafter, the appellant sought reimbursement from his FEGLTD insurance carrier for the amount of the overpayment, and he requested specific information from OPM to enable him to do so. IAF, Tabs 3, 7-9. The administrative judge dismissed the appeal without prejudice to allow the appellant sufficient time to obtain a decision from his insurance carrier. IAF, Tab 10, Initial Decision. On December 3, 2015, the appellant's insurance carrier determined that it had underpaid him by $118,384.31, and thus reimbursed him that amount. RAF, Tab 4 at 7-10.

¶8    The administrative judge then refiled the appeal sua sponte. RAF, Tab 1. After the appellant waived his right to a hearing and the record closed, RAF, Tab 13, the administrative judge found that the agency had proven the amount and existence of an overpayment, RAF, Tab 17, Initial Decision (ID) at 5-6. The administrative judge found that the appellant was without fault in creating the overpayment, but that he was not entitled to a waiver or adjustment of the repayment schedule. ID at 7-10. The administrative judge further found that the appellant had not demonstrated that he was entitled to a partial waiver based on detrimental reliance or unconscionability. ID at 10-14. The appellant filed a petition for review. Petition for Review (PFR) File, Tab 1.

**DISCUSSION OF ARGUMENTS ON REVIEW**

Burdens and Elements of Proof

¶9    OPM bears the burden of showing the existence and the amount of an annuity overpayment by a preponderance of the evidence.[2] 5 C.F.R. § 845.307(a). An appellant seeking waiver of an established overpayment bears the burden of establishing his entitlement to such a waiver by substantial evidence.[3] 5 C.F.R. § 845.307(b).  To be entitled to a waiver, the appellant must show that:  (1) he is without fault in creating the overpayment; and (2) recovery of the overpayment would be against equity and good conscience.  5 U.S.C. § 8470(b); *Parker v. Office of Personnel Management*, 75 M.S.P.R. 688, 692 (1997).

¶10   Recovery of an overpayment is against equity and good conscience if it would cause financial hardship, the appellant can show he relinquished a valuable right or changed positions for the worse due to the overpayment, or it would be inequitable otherwise under the circumstances, i.e., unconscionable.  *Vojas v. Office of Personnel Management*, 115 M.S.P.R. 502, ¶ 22 (2011); 5 C.F.R. § 845.303.  The standard for unconscionability is a high one and is granted only under exceptional circumstances.  *Taylor v. Office of Personnel Management*, 87 M.S.P.R. 214, ¶ 18 (2000).  In assessing unconscionability, the Board considers all relevant factors under a totality of the circumstances approach.  *Aguon v. Office of Personnel Management*, 42 M.S.P.R. 540, 550 (1989).  Such circumstances may include, but are not limited to, cases wherein: (1) the agency delayed an exceptionally long time to adjust an annuity; (2) the agency failed to respond within a reasonable length of time to an annuitant's inquiries regarding an overpayment; (3) the agency failed to act expeditiously to

---

[2] A preponderance of the evidence is that degree of relevant evidence that a reasonable person, considering the record as a whole, would accept as sufficient to find that a contested fact is more likely to be true than untrue.  5 C.F.R. § 1201.4(q).

[3] Substantial evidence is the degree of relevant evidence that a reasonable person, considering the record as a whole, might accept as adequate to support a conclusion, even though other reasonable persons might disagree.  5 C.F.R. § 1201.4(p).

adjust an annuity in the face of the specific notice; and/or (4) the agency is otherwise grossly negligent in handling the case. *Id.* at 550-51; *see, e.g.*, *Newcomb v. Office of Personnel Management*, 42 M.S.P.R. 552, 558-59 (1989), (determining that a delay of 3 years and 10 months between a request for waiver and a final decision from the agency is not unconscionable); Policy Guidelines on the Disposition of Overpayments under the Civil Service Retirement System and Federal Employees' Retirement System § I.F.1 (May 1995) (hereinafter Policy Guidelines) (stating that for a waiver based on egregious errors or delays to satisfy the standard for unconscionability, there must be "a determination that the agency's handling of a case was so offensive—so monstrously harsh and shocking to the conscience—that one's sense of equity forbids recovery").

¶11    However, an individual who knows or suspects that he is receiving an overpayment is required by principles of equity and good conscience to set aside the overpayment for OPM to recover. *Dorrello v. Office of Personnel Management*, 91 M.S.P.R. 535, ¶ 7 (2002). In such cases, recovery by OPM is not against equity and good conscience. *Zucker v. Office of Personnel Management*, 114 M.S.P.R. 288, ¶ 7 (2010); Policy Guidelines § I.C.4 (stating that a without-fault appellant who accepts a payment he suspects or knows to be erroneous is obligated to set aside the overpaid money pending recovery, and recovery in such cases is not against equity and good conscience). Waivers of repayment are granted only in exceptional circumstances, which do not include financial hardship. *Zucker*, 114 M.S.P.R. 288, ¶ 7. The Board applies the set‑aside rule and determines whether a waiver is appropriate according to the specific facts of each case. *Harrison v. Office of Personnel Management*, 57 M.S.P.R. 89, 93 (1993).

Fault Determination

¶12    Because the administrative judge found him to be without fault in causing the overpayment, the appellant asserts, the administrative judge could not have reasonably concluded that he accepted an overpayment that he knew or should

have known to be erroneous. PFR File, Tab 1 at 6-7; ID at 7. The appellant misconstrues the administrative judge's determination that he was without fault. Fault determination is the first step in the decisionmaking process regarding waiver. Policy Guidelines § I.B.1; *see* 5 U.S.C. § 8470(b); *Parker*, 75 M.S.P.R. at 692. An overpayment debtor will be found to be without fault if he performed no act of commission or omission resulting in the overpayment. Policy Guidelines § I.B.1. Here, the appellant promptly offered a status update regarding his Social Security disability benefits application when OPM requested one. IAF, Tab 5 at 55. He submitted a sworn statement regarding his telephonic contact with OPM after he was approved for Social Security disability benefits. RAF, Tab 8 at 15-16; *see* Policy Guidelines § I.B.6 (stating that an individual who accepts an overpayment will automatically be found without fault, regardless of whether he knew or should have known that the payment was erroneous, if he promptly contacts OPM and questions the correctness of the payment). The administrative judge thus reasonably concluded that the appellant was without fault in causing the overpayment. ID at 7. Whether recovery is against equity and good conscience, however, is a separate consideration. 5 U.S.C. § 8470(b); *Parker*, 75 M.S.P.R. at 692; Policy Guidelines § I.C.1 ("The against-equity test is the second hurdle in the waiver decision making process."). It requires a showing of financial hardship, detrimental reliance, or unconscionability. Policy Guidelines § I.C.1. The appellant did not allege financial hardship, and as we explain below, he did not establish detrimental reliance or unconscionability.

Detrimental Reliance

¶13     The appellant asserts that the administrative judge erroneously relied upon *Slater v. Office of Personnel Management*, 42 M.S.P.R. 510 (1989), for the proposition that, even if his tax burden had increased because of the overpayment, he nevertheless failed to meet the criteria for detrimental reliance and was thus not entitled to a partial waiver. PFR File, Tab 1 at 16-17; ID at 11-13. The appellant argues that the circumstances in *Slater* may be distinguished from his

own because his tax liability did not result from receiving added income via the overpayment, but instead, resulted from receiving taxable income from OPM in lieu of the nontaxable income he should have received from his FEGLTD insurance carrier. PFR File, Tab 1 at 16. He argues that his FEGLTD benefits did not compensate him for the income taxes he already had paid in prior years on the overpaid FERS benefits. *Id.* at 16-19. As in *Slater*, however, the appellant's tax liability resulted from his receipt of an overpayment from OPM. *Slater*, 42 M.S.P.R. at 520. That he was later able to recoup most of the overpayment from an insurance policy is not controlling.

¶14     The appellant also argues that the circumstances in his case more closely resemble those in *Day v. Office of Personnel Management*, 873 F.2d 291 (Fed. Cir. 1989). PFR File, Tab 1 at 17-19. In *Day*, an annuitant who was retroactively reinstated to the date of his retirement asked OPM to waive his annuity repayment after the deductions taken from his back pay award left him with too little money to pay the income taxes he owed on that sum. *Day v. Office of Personnel Management*, 833 F.2d 1580, 1581 (Fed. Cir. 1987). The U.S. Court of Appeals for the Federal Circuit vacated the Board's decision denying a waiver and remanded the case with instructions for the Board to apply the analysis required by 5 U.S.C. § 8346(b). *Id.* at 1581-82. Section 8346(b) sets forth the standard for determining whether OPM can waive recovery of an overpayment, i.e., that "the individual is without fault and recovery would be against equity and good conscience." In contrast, the administrative judge here has conducted such analysis, ID at 7-14, and in any event, the *Day* court ultimately found that the appellant was not entitled to a waiver, *Day*, 873 F.2d at 292-94. The appellant has not made a compelling argument that his entitlement to a waiver is stronger than that of the appellant in *Day*. In *Day* as here, an agency's improper action led to the appellant's unexpected tax liability, *Day*, 873 F.2d at 292-93, and in any event, he was in a position to prevent his own losses by more closely monitoring changes to his income stream.

¶15      As for the appellant's assertion that he would be unable to amend past-year tax returns to eliminate the overpayment income, his tax advisor's declaration does not address whether he might avail himself of any other options that would allow him to recoup or otherwise rectify the tax burden while he repays the overpayment in future years. RAF, Tab 9 at 47-48. Because he bore the burden of proof, it was his obligation to address these matters. *Parker*, 75 M.S.P.R. at 692. It was likewise his obligation to monitor the sources of his income as he received it, especially as he had been warned that an overpayment was possible under the circumstances. IAF, Tab 5 at 56, 69.

Unconscionability

¶16      The appellant additionally argues that he should receive a partial waiver of the overpayment for the period from January through September 2014 based on unconscionability. PFR File, Tab 1 at 9-11. That period covers the time between his initial notice to OPM that he believed he might be receiving an overpayment and OPM's recalculating his annuity payment. *Id.* at 9; IAF, Tab 5 at 48-50; RAF, Tab 8 at 17-18. The appellant asserts that the agency's "[w]illful failure after repeated notice over a period of nine months which cost [him] more than $4000 in tax payments he would not otherwise have owed or had to pay constitutes unclean hands[.]" PFR File, Tab 1 at 11; RAF, Tab 7 at 20-21. The administrative judge found that the appellant did not suffer actual harm as a result of this delay and that "any tax consequences for this time period may be resolved through future offset of taxable income." ID at 14.

¶17      The Board will grant a waiver based on unconscionability only under exceptional circumstances. *Taylor*, 87 M.S.P.R. at 221. For a waiver based on egregious errors or delays to satisfy the standard for unconscionability "requires a determination that the agency's handling of a case was so offensive—so monstrously harsh and shocking to the conscience—that one's sense of equity forbids recovery." Policy Guidelines § I.F.1. The delay between the appellant's reporting the overpayment and OPM's readjusting his annuity is unfortunate, but

not egregiously long. *See, e.g.*, *Newcomb*, 42 M.S.P.R. at 558‑59 (finding a delay of 3 years and 10 months between a request for waiver and a final decision was not unconscionable). As we have explained, moreover, the appellant did not establish that any of the tax consequences he experienced for receiving taxable income during that period were irrevocable.

Applicability of the Set-Aside Rule

¶18    The appellant asserts that the administrative judge erroneously concluded that he should have known he was receiving an overpayment, thus triggering application of the set-aside rule for payments he received between July 2008 and January 2014. PFR File, Tab 1 at 6-7; ID at 8-10. He explains that, because of the statutorily mandated reduction in his benefits, *see* 5 U.S.C. § 8452(a)(1)(a), his annuity payment was reduced by nearly the same amount as it would have otherwise been reduced had his Social Security benefits been deducted during the same time period, PFR File, Tab 1 at 6. He further explains that he was suffering from debilitating pain and taking high doses of pain medication during that time, which may have affected his ability to conclude that OPM was not yet deducting the Social Security benefits from his annuity. *Id.* at 8. He asserts that the administrative judge did not consider his medical condition and how it might have affected his cognitive abilities, and instead gave weight to the fact that OPM twice reminded him during 2008 to set aside any payments he received from the Social Security Administration. *Id.* at 8-9.

¶19    The appellant further asserts that the Policy Guidelines § I.C.4, require OPM to show that he had actual knowledge or, at least, "actual suspicion" that he was receiving an overpayment. *Id.* at 9 (emphasis omitted). Only actual knowledge, or actual suspicion, he argues, would give rise to the prohibition against unjust enrichment upon which the set-aside rule is based. *Id.* He asserts that the administrative judge erred in holding him liable for what he might have reasonably been expected to know, rather than what he actually knew. *Id.*

¶20    The appellant's annuity was reduced from $6,661 to $4,441 on July 1, 2008, and that reduction is similar in amount to the $2,170 per month in Social Security disability benefits for which he later qualified.  RAF, Tab 8 at 16.  He also credibly alleged that his personal circumstances at the time were challenging.  *Id.*  The appellant's argument is nevertheless unavailing.  He knew that his annuity would be reduced after 1 year, aside from any consideration of Social Security disability benefits.  IAF, Tab 5 at 70.  The reduction of his annuity took place a month *before* he received notice that he had been approved for Social Security disability benefits.  IAF, Tab 5 at 5, 23-26, 47; RAF, Tab 8 at 15-16, Tab 9 at 12−15.  The appellant also knew that the set-aside rule was in force.  IAF, Tab 5 at 56, 70.  When he was initially approved for Social Security disability benefits, he received a retroactive payment from the Social Security Administration, *id.* at 14, but he did not remit that sum to OPM even though he knew he would need to do so, *id.* at 56.  Additionally, as the administrative judge explained, nothing in the appellant's circumstances relieved him of the obligation to monitor the sources of his income at the time.  ID at 20.  Contrary to his assertion, section I.C.4 of the Policy Guidelines does not require actual knowledge.  Section I.C.4 states that an individual who has accepted a known or suspected overpayment and has been found to be without fault because he promptly notified OPM of the overpayment is nevertheless obliged to set aside the overpayment for recovery by OPM.  Policy Guidelines § I.C.4; *see* Policy Guidelines § I.B.6.  The appellant clearly suspected he may have been receiving an overpayment, as shown by the fact he notified OPM that he had started receiving Social Security disability payments as he had been instructed to do.  RAF, Tab 8 at 15-16.

Abuse of Discretion

¶21    Finally, the appellant argues that the administrative judge abused her discretion by "injecting into the initial decision factual and legal arguments, not presented by the agency, as to which [he] had no notice and no opportunity to

present evidence or respond in legal argument." PFR File, Tab 1 at 12. He asserts that, because OPM did not frame any argument about his tax liability, he had no notice that the administrative judge would make findings regarding that issue. *Id.* at 12-13. The administrative judge's findings, however, should not have been a surprise because the appellant himself submitted a declaration from his tax advisor. RAF, Tab 9 at 46-48. Although the appellant asserts that he can supply another declaration from his tax advisor demonstrating why the initial decision was "demonstrably wrong" concerning his taxes, PFR File, Tab 1 at 16, he has not done so.[4] Accordingly, we affirm the initial decision finding that the appellant was not entitled to waiver.

### NOTICE TO THE APPELLANT REGARDING
### YOUR FURTHER REVIEW RIGHTS

You have the right to request review of this final decision by the U.S. Court of Appeals for the Federal Circuit. You must submit your request to the court at the following address:

United States Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, DC 20439

The court must receive your request for review no later than 60 calendar days after the date of this order. *See* 5 U.S.C. § 7703(b)(1)(A) (as rev. eff. Dec. 27, 2012). If you choose to file, be very careful to file on time. The court has held that normally it does not have the authority to waive this statutory deadline and that filings that do not comply with the deadline must be dismissed. *See Pinat v. Office of Personnel Management*, 931 F.2d 1544 (Fed. Cir. 1991).

---

[4] The appellant also argues that the Board should remand the appeal for a determination of the correct amount of the waiver because his tax advisor inadvertently failed to exclude the increase in tax liability he accrued when he received a lump sum payment from the Social Security Administration in July 2008. PFR File, Tab 1 at 4. He submitted no supporting evidence, and in any event, he has not established that he qualifies for a waiver.

If you need further information about your right to appeal this decision to court, you should refer to the Federal law that gives you this right. It is found in title 5 of the United States Code, section 7703 (5 U.S.C. § 7703) (as rev. eff. Dec. 27, 2012). You may read this law as well as other sections of the United States Code, at our website, http://www.mspb.gov/appeals/uscode.htm. Additional information is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Merit Systems Protection Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.


FOR THE BOARD:                    _____
                                  Jennifer Everling
                                  Acting Clerk of the Board

Washington, D.C.